UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHAD STANCZYK, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CONCORDIA INTERNATIONAL CORP., MARK THOMPSON, and ADRIAN DE SALDANHA,<br><br>Defendants. | Case No.:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Chad Stanczyk ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Concordia International Corp. ("Concordia" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Concordia; and (c) review of other publicly available information concerning Concordia.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that acquired Concordia securities between November 12, 2015, and August 12, 2016, inclusive (the "Class Period"), against the Defendants, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Concordia is a specialty pharmaceutical company that purportedly owns a portfolio of branded and generic prescription products which are sold to wholesalers, hospitals and pharmacies in over 100 countries.

3. On August 12, 2016, Concordia issued a press release announcing that it was lowering its 2016 guidance "to reflect the impact of unexpected competition on several products in our North America segment, and current foreign currency exchange rates." The Company also announced that Adrian de Saldanha, Concordia's Chief Financial Officer, was leaving the Company, and that Concordia's Board unanimously agreed to suspend the Company's $0.075 quarterly dividend.

4. On this news, Concordia' stock price fell $6.33 per share, or 38%, to close at $10.03 per share on August 12, 2016, on unusually heavy trading volume.

5. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company was experiencing a substantial increase in market competition against the Company's drug, Donnatal, and other products; (ii) consequently, the Company's financial results would suffer and the Company would be forced to suspend its dividend; and (iii) as a result of the foregoing, Defendants' statements about Concordia's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, Concordia securities are actively traded in this Judicial District.

10. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Concordia securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12. Defendant Concordia is an Ontario, Canada corporation with its principal executive offices located at 277 Lakeshore Road East, Suite 302, Oakville, Ontario L6J, Canada.

Concordia' common shares trade on the NASDAQ Stock market ("NASDAQ") under the symbol "CXRX."

13. Defendant Mark Thompson ("Thompson") has served at all relevant times as the Chief Executive Officer ("CEO") of Concordia.

14. Defendant Adrian de Saldanha ("Saldanha") served at all relevant times as the Chief Financial Officer ("CFO") of Concordia until his departure in August 2016.

15. Defendants Thompson, and Saldanha are collectively referred to hereinafter as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

16. The Class Period begins on November 12, 2015, when Concordia issued a press release entitled "Concordia Healthcare Announces Third Quarter 2015 Results." Therein, the Company stated, in relevant part:

> **Third Quarter 2015 Highlights**
>
> - Concordia announced its acquisition of Amdipharm Mercury Limited ("AMCo") for $3.3 billion[1].
> - Adjusted EBITDA of $71.7 million, growing 254 per cent versus the same period in 2014.
> - Adjusted EPS of $1.46, growing 157 per cent over the third quarter in 2014.
> - Revenue growth of 161 per cent to $94.9 million compared to the third quarter of 2014.
>
> **2015 Nine Month Highlights**
>
> - Revenue growth of 163 per cent to $208.9 million compared to the same period in 2014.

- Adjusted EBITDA of $146.8 million, growing 280 per cent versus the same period in 2014.

- Adjusted EPS2 of $3.14 a growth of 185 per cent versus the first nine months of 2014.

**2016 Guidance Reaffirmed**

- Adjusted EBITDA of $610 million to $640 million.

OAKVILLE, ON, Nov. 12, 2015 /CNW/ - **Concordia Healthcare Corp. ("Concordia" or the "Company")** (NASDAQ: CXRX) (TSX: CXR) today announced its financial and operational results for the three and nine months ended September 30, 2015. All financial references are in U.S. dollars unless otherwise noted.

"The third quarter of 2015 has been one of the most significant and important periods in Concordia's history. We completed the acquisition of AMCo, which has transformed Concordia into a global organization with more than 200 well-established legacy products sold in over 100 countries," said Mark Thompson, Chairman and Chief Executive Officer of Concordia. "Our legacy business continues to perform strongly quarter over quarter. This is a testament to our business model as well as our commitment to delivering value to our shareholders. As we move into the next phase of Concordia's evolution, we expect to demonstrate underlying organic growth of our business through continued promotion of our legacy portfolio, growth of our Photofrin® business, and successful product launches from our existing pipeline."

* * *

**Divisional Financial Results**

The Company has three reportable operating segments: Concordia's Legacy Pharmaceuticals Division, its Orphan Drugs Division, and its SHD Division.

*Legacy Pharmaceuticals Division*

Legacy Pharmaceuticals Division revenue for the three months ended September 30, 2015 was $90.6 million, compared to $29.2 million in the same quarter of 2014, an increase of 210 per cent. The addition of the portfolio acquired from Covis on April 21, 2015 drove an increase in third quarter revenue of approximately $52.9 million, while Donnatal® performed strongly delivering another sequential quarter of volume growth. Growth from Donnatal®, and the additions of Zonegran® and portfolio of

products acquired from Covis was partially offset by revenue declines in Kapvay®, Orapred® and Ulesfia®. Legacy Pharmaceuticals Division revenue for the nine months ended September 30, 2015 was $194.1 million, compared to $58.1 million during the same period in the prior year, an increase of 234 per cent.

Gross profit for the Legacy Pharmaceuticals Division for the three and nine months ended September 30, 2015 was $83.1 million and $177.5 million, respectively, compared to $26.2 million and $48.9 million for the same periods in 2014. Gross profit margin for the quarter was 92 per cent compared with 90 per cent in the same quarter of 2014. The increases over the prior year were primarily due to a more favourable product mix driven by the additions of Zonegran® and the portfolio of products acquired from Covis to Concordia's legacy portfolio. Gross profit margin for the nine months ended September 30, 2015 was 91 per cent compared to 84 per cent for the same period in 2014.

Cost of sales for the three and nine months ended September 30, 2015 was $7.6 million and $16.6 million, respectively, up from $3.0 million and $9.2 million the previous year.

* * *

**Preliminary Guidance for 2016**

For fiscal 2016, Concordia reaffirms guidance as follows:

- Revenues of $1,020 to $1,060 million.
- Approximately 60 per cent of revenues to be generated outside the United States.
- U.S. government payors to account for less than 10 per cent of overall revenue.
- Adjusted EBITDA of $610 million to $640 million.
- Adjusted net income of $330 million to $355 million; adjusted EPS of $6.29 to $6.77.
- Cash interest expense rate at approximately 6.95 per cent (excluding original issue discount).
- Cash tax rate between 9 per cent and 10 per cent.
- Year-end Net Debt/EBITDA of 5.5x or below.

- Year-end cash on hand of approximately $130 million.

- Undrawn revolving credit facility of $200 million at the end of 2016.

> As previously announced, 2016 guidance assumes that the gross profit targets for the £144 million (approximately $220 million as at time of announcement; approximately $207.5 million as at time of closing) earn-out payment ("earn-out") to the sellers of AMCo have been fully met, and that the entire payment has been financed from the Company's 2016 operating cash flow.

17. On March 23, 2016, Concordia issued a press release entitled, "Concordia Healthcare Announces Fourth Quarter And Fiscal 2015 Results And Board Appointment." Therein, the Company stated, in relevant part:

> OAKVILLE, ON, March 23, 2016 /CNW/ - Concordia Healthcare Corp. ("Concordia" or the "Company") (NASDAQ: CXRX) (TSX: CXR), an international pharmaceutical company focused on legacy pharmaceutical products and orphan drugs, today announced its financial and operational results for the three and 12 months ended December 31, 2015. All financial references are in U.S. dollars unless otherwise noted.
>
> "Concordia's accomplishments in 2015 have created a global infrastructure that diversifies the Company across product lines, geographies and sales channels," said Mark Thompson, Founder, Chairman and Chief Executive Officer of Concordia. "Our infrastructure uniquely positions the Company to provide safe and effective medicines to patients in more than 100 countries, which we believe will allow us to evaluate growth opportunities on a global scale going forward. In addition, our achievements in 2015, in particular the acquisition of the portfolio of products from Covis, the purchase of AMCo and the organic growth we have generated from key products such as Donnatal®, have resulted in substantial year-over-year revenue and adjusted EBITDA growth."
>
> **Fourth Quarter 2015 Highlights**

- On October 21, completed the acquisition of U.K.-based speciality pharmaceutical company Amdipharm Mercury Limited ("AMCo"). The acquisition provides the Company with greater product diversification through the addition of more than 190 products and a global platform for continued expansion.

- On November 23, announced the launch of Nefopam in the U.K. Nefopam, a generic version of Accupan, is a non-narcotic painkiller. The launch is the first of approximately 60 anticipated product launches Concordia intends to initiate over the next three years.

- On December 15, announced that the Company was selected by NASDAQ for addition to the NASDAQ Biotechnology Index® (NASDAQ: NBI). Concordia began trading as part of the NBI on December 21, 2015.

- On December 22, made a total of $45 million debt principal payments by repaying $11.25 million of its $45 million two year senior unsecured bridge loan, and $33.75 million of its $135 million extended senior unsecured bridge loan.

- On March 22, 2016, Concordia's board of directors approved a $0.075 dividend per common share. A record date of April 15, 2016 was declared by the board of directors with a distribution of proceeds expected to occur on April 29, 2016. Declarations and payments will be made in U.S. dollars. All future quarterly dividends will be subject to quarterly financial review and board approval.

**Fiscal 2015 Highlights**

- On April 21, completed the acquisition of substantially all the assets of Covis Pharma S.à.r.l and Covis Injectables S.à.r.l. (collectively, "Covis") for $1.2 billion. These assets added products such as Plaquenil®, Nilandron® and Lanoxin® to Concordia's portfolio of branded products.

- On October 21, completed the acquisition of AMCo. The acquisition provides the Company with product diversification through the addition of more than 190 products, including an international pipeline and a global platform for continued expansion.

- Advanced the Company's rare disease product candidate Photofrin® through a Phase 3 clinical trial to evaluate the product's safety and efficacy as a potential treatment for cholangiocarcinoma. Cholangiocarcinoma, or bile duct cancer, is a rare disease affecting approximately 2,000-3,000 patients annually in the United States. Concordia already markets Photofrin® as a treatment for non-small cell lung cancer, Barrett's esophagus and esophageal cancer.

* * *

**Consolidated Operating Results**

The Company's consolidated operating results are generated by three operating segments (two of which are newly defined): Concordia's North America Division, International Division and Orphan Drugs Division. These operating segments better reflect Concordia's global structure.
For 2015, consolidated revenues of $394.2 million increased by $289.2 million compared to 2014 primarily due to $115.7 million of revenues from the Concordia International segment acquired October 21, 2015 and $127.4 million from the expansion of the Concordia North America Division through the Covis product portfolio acquisition on April 21, 2015.

For the fourth quarter of 2015, revenues increased $152.4 million to $191.9 million mainly due to revenue generated from Concordia International's products, and organic growth from Donnatal®, the Company's adjunctive therapy for irritable bowel syndrome.

Adjusted gross profit of $333.9 million for 2015 increased by $243.6 million. Adjusted gross profit for the fourth quarter was $149.7 million up 326 per cent from $35.1 million in the fourth quarter of 2014.

Net loss from continuing operations for 2015 was $29.4 million compared to net income of $8.9 million in 2014. Net loss from continuing operations for the quarter and 12 months were impacted by acquisition-related costs, as well as accelerated accretion and amortization of deferred financing charges related to the early repayment of certain debt as part of the Covis and AMCo acquisitions and increased amortization of intangible assets.

For 2015, adjusted EBITDA was $265.7 million, which was $206.2 million higher than in 2014. Fourth quarter, 2015 adjusted EBITDA was $120.1 million compared to fourth quarter, 2014 adjusted EBITDA of $25.2 million.

As at December 31, 2015, the Company had cash of $155.4 million and had up to $200 million available, subject to compliance with certain debt covenants, from an undrawn, secured revolving credit facility.

As at December 31, 2015 and March 23, 2016, the Company had, respectively, 51.0 million and 51.1 common shares issued and outstanding on a non-diluted basis.

*Concordia North America*

Formerly the Legacy Pharmaceuticals Division, the Concordia North America Division has a diversified product portfolio of brand products that focusses primarily on the United States pharmaceutical market.

Concordia North America revenues for the three months and year ended December 31, 2015 were $74.2 million and $268.3 million respectively. Concordia North America revenues for the three months and year ended December 31, 2014 were $36.2 million and $94.3 million respectively. Revenues were higher for both the quarter and year due to a larger and more diverse product portfolio consisting of products such as Lanoxin®, Plaquenil® and Nilandron®, which the Company did not own in 2014.

Adjusted gross profit for the Concordia North America Division for the three and 12months ended December 31, 2015 was $66.5 million and $244.6 million respectively, compared to $32.6 million and $81.5 million for the same periods in 2014.

Adjusted gross profit margin percentage for the three and twelve months ended December 31, 2015 was 90 per cent and 91 per cent, respectively, compared to 90 per cent and 86 per cent for the same periods in 2014.

The increases in adjusted gross profit, and adjusted gross profit margin percentage for the three and 12 months versus the same periods during the prior year were primarily due to a more favourable product mix driven by new additions to Concordia's legacy portfolio, such as Lanoxin®, Plaquenil® and Nilandron®. The adjusted gross margin was also positively impacted by a full year of Donnatal® results in 2015 compared to 2014 and offset negatively by minor portfolio gross margin decreases including the impact of generic competition primarily related to Dibenzyline®.

Cost of sales for the three and 12 months ended December 31, 2015 was $7.1 million and $23.7 million respectively, up from $3.6 million and $12.8 million the previous year. The increase reflects greater sales volumes and the corresponding costs of active pharmaceutical ingredients, excipients, packaging, freight costs and royalties.

*Concordia International*

Concordia International consists of the AMCo business acquired on October 21, 2015. This division includes a diversified portfolio of more than 190 branded and generic products which are sold to wholesalers, hospitals and pharmacies in more than 100 countries. Concordia International focuses on the development, acquisition and licensing of off-patent prescription medicines, which may be niche, hard-to-make products.

Concordia International revenues for the three months ended December 31, 2015 of $115.7 million represent sales for the 72-day period from the acquisition of AMCo on October 21, 2015 to December 31, 2015.

Adjusted gross profit for Concordia International for the 72-day period ended December 31, 2015 was $81.0 million. Adjusted gross profit margin percentage was 70 per cent.

Cost of sales of $34.7 million for the 72-day period reflect product manufacturing costs, packaging, freight costs and other distribution expenses.

There was no comparative period in the prior year for revenues, adjusted gross profit, adjusted gross profit margin percentage or cost of sales.

*Orphan Drugs*

Concordia's Orphan Drug segment primarily consists of Photofrin®, which Concordia sells as a treatment for non-small cell lung cancer, Barrett's esophagus and esophageal cancer in the U.S. and additional indications globally. The Company is also advancing Photofrin® through a Phase 3 clinical trial to evaluate the product's safety and efficacy as a potential treatment for cholangiocarcinoma. Cholangiocarcinoma, or bile duct cancer, is a rare disease affecting approximately 2,000-3,000 patients annually in the United States.

Orphan Drugs Division revenues for the three months ended December 31, 2015 were $2.0 million compared to $3.3 for the same period in 2014. Revenues for the year ended December 31, 2015 were $10.2 million, which were mainly consistent compared to 2014 revenues of $10.7 million. Adjusted gross profit in 2015 was $8.3 million, compared to adjusted gross profit of $8.8 million in 2014.

*Guidance for 2016*

For fiscal 2016, Concordia reaffirms guidance, on a constant currency basis, as follows:

- Revenues of $1,020 to $1,060 million. Greater than 60 per cent of revenues to be generated outside the United States.
- Adjusted EBITDA1 of $610 million to $640 million.
- Adjusted net income1 of $330 million to $355 million; adjusted EPS of $6.29 to $6.77.
- Cash interest expense rate at approximately 6.95 per cent (excluding original issue discount).

- Cash tax rate of approximately 10 per cent.

- Year-end Net Debt/EBITDA1 of approximately 5.5x.

- As previously announced, 2016 guidance assumes that the gross profit targets for the £144 million (approximately $220 million as at time of announcement; approximately $207.5 million as at time of closing) earn-out payment ("earn-out") to the sellers of AMCo have been fully met.

18. On May 13, 2016, Concordia issued a press release entitled, "Concordia Healthcare Announces First Quarter 2016 Results And Acquisition Of Four Products With Global Rights." Therein, the Company stated, in relevant part:

> OAKVILLE, ON, May 13, 2016 /CNW/ - Concordia Healthcare Corp. ("Concordia" or the "Company") (NASDAQ: CXRX) (TSX: CXR), an international pharmaceutical company focused on legacy pharmaceutical products and orphan drugs, today announced its financial and operational results for the three months ended March 31, 2016. All financial references are in U.S. dollars unless otherwise noted.
>
> "Concordia's first quarter consolidated and division results demonstrate the growing strength and diversity of our business," said Mark Thompson, Founder, Chairman and Chief Executive Officer of Concordia. "Our North America segment performed in-line with our expectations, while our Concordia International segment continued to deliver strong results. We are also excited about the acquisition of the four new products, which further diversifies our product portfolio. We intend to continue to acquire products where the multiples present attractive opportunities. Finally, the launch of 10 new products is evidence of our commitment to our pipeline and future growth."
>
> **First Quarter 2016 Highlights**
>
> - Reported Concordia North America segment revenue of $85.9 million compared to $74.2 million in the fourth quarter of 2015.
>
> - Reported Concordia International segment revenue of $139.9 million compared to $115.7 million in the fourth quarter of 2015.
>
> - Since October 21, 2015, launched 10 products across the U.K., Scandinavia and Australia.

- On May 9, 2016, Concordia's board of directors approved a $0.075 dividend per common share payable on July 29, 2016 to shareholders of record on July 15, 2016. All future quarterly dividends will be subject to quarterly financial review and board approval.

* * *

**Consolidated Operating Results**

The Company's consolidated operating results are generated by three operating segments: Concordia's North America segment, International segment and Orphan Drugs segment.

Revenue of $228.5 million for the first quarter of 2016 increased by $194.4 million or 570 per cent compared to the corresponding period in 2015. The increase was primarily due to $139.9 million of revenue from the Concordia International segment acquired on October 21, 2015 and $56.8 million from the Covis portfolio of products acquired on April 21, 2015, both of which are not included in the comparative period.

Gross profit for the first quarter of 2016 increased by $130 million, or 428% compared to the corresponding period in 2015. Total gross profit includes $74.6 million from the Concordia North America segment, $83.2 million from the Concordia International segment and $2.0 million from the Orphan Drugs segment. The increase was primarily due to the acquisition of AMCo and the acquisition of the Covis portfolio of products during 2015. Gross profit is impacted by an inventory fair value adjustment of $18.6 million related to the acquisition of AMCo. Adjusted gross profit for the first quarter of 2016, which represents gross profit removing the impact of the fair value adjustment as described above, increased by $148.2 million, or 489% compared to the corresponding period in 2015.

Operating income for the first quarter of 2016 compared to the corresponding period in 2015 increased by $50.1 million or 511 per cent to $59.9 million primarily due to increased gross profit from the Concordia International segment and the Covis product portfolio, partially offset by the increased operating expenses reflecting the increased size and scale of the Company's business.

The net loss of $4.8 million from continuing operations for the first quarter of 2016 and EPS loss of $0.09 per share is after deducting increased amortization expense, higher interest and accretion expenses associated

with intangible assets and related financing for the business combinations in 2015.

Adjusted EBITDA for the quarter of $140.8 million was $121.6 million or 631 per cent higher than the same quarter in 2015. Contribution of adjusted EBITDA by segment was $65.4 million from Concordia North America, $82.2 million from Concordia International, offset by losses of $0.6 million from Orphan Drugs. In addition the Company incurred $6.2 million of costs related to the Corporate Head Office which reduced adjusted EBITDA.

As at March 31, 2016, the Company had cash of $178.5 million and had up to $200 million available, subject to compliance with certain debt incurrence covenants, from an undrawn, secured revolving credit facility.

As at March 31, 2016 and May 12, 2016, the Company had, respectively, 51,015,872 and 51,016,543 common shares issued and outstanding.

*Concordia North America*

Formerly the Legacy Pharmaceuticals Division, the Concordia North America segment has a diversified portfolio of brand products and authorized generic contracts that focus primarily on the United States pharmaceutical market.

Revenue of $85.9 million for the first quarter of 2016 increased by $54.9 million or 177 per cent compared to the corresponding period in 2015, primarily due to $56.8 million of revenue related to products and authorized generic contracts acquired from Covis on April 21, 2015. The increase is partially offset by the impact of the discontinuation of royalty revenue related sales of generic Kapvay® effective June 2015.

Cost of sales of $11.3 million for the first quarter of 2016 increased by $7.9 million, or 235 per cent compared to the corresponding period in 2015, primarily due to costs associated with revenue related to the acquisition of the Covis portfolio of products acquired on April 21, 2015.

Gross profit of $74.6 million for the first quarter of 2016 increased by $47.0 million or 170 per cent compared to the corresponding period in 2015, primarily due to additional gross profit from the Covis product portfolio acquired on April 21, 2015, offset by higher Medicaid claims quarter over quarter and the impact of the lower royalty revenue as described above.

Gross profit per cent for the first quarter of 2016 decreased by 2 per cent to 87 per cent compared to same period in 2015. The decrease was due to the mixed impact attributed to stronger performance in lower margin authorized

generics and customer mix on branded sales with higher rebates and therefore lower margins.

*Concordia International*

Concordia International consists of the AMCo business acquired on October 21, 2015. This division includes a diversified portfolio of more than 190 molecules and 345 branded and generic products which are sold to wholesalers, hospitals and pharmacies in more than 100 countries. Concordia International focuses on the development, acquisition and licensing of off-patent prescription medicines, which may be niche, hard-to-make products.

Concordia International's financial results for the first quarter ended March 31, 2016, including revenue of $139.9 million, are based on 91 days of performance at an average foreign exchange rate of 1.4321 GBP/USD.

Concordia International's fourth quarter financial results, including revenue of $115.7 million, were based on 72 days of performance (due to the closing of the AMCo acquisition on October 21, 2015) at an average foreign exchange rate of 1.5042 GBP/USD.

Cost of sales for the first quarter of 2016 was $56.7 million compared to $57.9 million in the fourth quarter of 2015. Adjusted gross profit was $101.9 million for the first quarter of 2016 compared to $81.0 million in the fourth quarter of 2015. Adjusted gross profit margin was 73 per cent for the first quarter of 2016 compared to 70 per cent in the fourth quarter of 2015.

Concordia acquired AMCo during October 2015 and therefore no results were reported in the comparative period in the prior year.

*Orphan Drugs*

Concordia's Orphan Drug segment primarily consists of Photofrin®, which Concordia sells as a treatment for non-small cell lung cancer, Barrett's esophagus and esophageal cancer in the U.S. and additional indications globally. The Company is also advancing Photofrin® through a Phase 3 clinical trial to evaluate the product's safety and efficacy as a potential treatment for cholangiocarcinoma. Cholangiocarcinoma, or bile duct cancer, is a rare disease affecting approximately 2,000-3,000 patients annually in the United States.

Revenue for the first quarter of 2016 declined to $2.7 million primarily due to a reduction in distribution revenue in Europe from Ethyol® included in the first quarter of 2015, which is no longer distributed by the Company.

> Cost of sales for the first quarter of 2016 increased to $0.7 million due to increased quality assurance stability and validation testing costs incurred in the current quarter.
>
> *Guidance for 2016*
>
> For fiscal 2016, Concordia reaffirms guidance, on a constant currency basis, as follows:
>
> - Revenues of $1,020 million to $1,060 million. Greater than 60 per cent of revenues to be generated outside the United States.
> - Adjusted EBITDA1 of $610 million to $640 million.
> - Adjusted net income1 of $330 million to $355 million; adjusted EPS of $6.29 to $6.77.
> - Year-end Net Debt/EBITDA1 of approximately 5.5x.
> - As previously announced, 2016 guidance assumes that the gross profit targets for the £144 million earn-out payment to the sellers of AMCo will be fully met.

19. The above statements contained in ¶¶16-18 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading statements and/or failed to disclose that: (i) that the Company was experiencing a substantial increase in market competition against the Company's drug, Donnatal, and other products; (ii) consequently, the Company's financial results would suffer and the Company would be forced to suspend its dividend; and (iii) as a result of the foregoing, Defendants' statements about Concordia' business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

20. On August 12, 2016, Concordia issued a press release announcing that it was lowering its 2016 guidance "to reflect the impact of unexpected competition on several products in our North America segment, and current foreign currency exchange rates." The Company also

announced that Adrian de Saldanha, Concordia's Chief Financial Officer, was leaving the Company, and that Concordia's Board unanimously agreed to suspend the Company's $0.075 quarterly dividend. More completely, and in relevant part, the Company stated:

> **OAKVILLE, ON – August 12, 2016 –** Concordia International Corp. ("Concordia" or the "Company") (NASDAQ: CXRX) (TSX: CXR), an international pharmaceutical company focused on legacy pharmaceutical products and orphan drugs, today announced its financial and operational results for the three and six months ended June 30, 2016. All financial references are in U.S. dollars unless otherwise noted.
>
> "Our international segment continues to perform well as the team executes and delivers on its business plan," said Mark Thompson, Chairman and Chief Executive Officer of Concordia. "However, we have revised our 2016 guidance to reflect the impact of unexpected competition on several products in our North America segment, and current foreign currency exchange rates. Notwithstanding these revisions, we continue to maintain a strong free cash flow profile, our debt structure has no ongoing maintenance covenants and we are in compliance with all of our debt covenants. Furthermore, the business we have built reflects the value of having therapeutic and geographic diversity across our global platform. We remain committed to building a dynamic international specialty pharmaceutical company and driving long-term shareholder value."
>
> **Second Quarter 2016 Highlights**
>
> - Reported Concordia International segment revenue of $151.5 million, compared to $139.9 million in the first quarter of 2016. There were no comparative second quarter 2015 results for Concordia's International segment, which was acquired in the fourth quarter of 2015.
>
> - Reported Concordia North America segment revenue of $77.5 million compared to $72.4 million in the second quarter of 2015.
>
> - Since October 21, 2015, the Company's International segment has launched 13 products. These products include branded and generic therapies for the treatment of prostate cancer, pain, depression, and obesity.
>
> - On June 30, 2016, Concordia announced that the U.S. Food and Drug Administration approved the Company's premarket approval application for its new Photofrin® Laser. The newly approved laser, which is designed for use with Photofrin® to treat esophageal

cancer, Barrett's Esophagus and non-small cell lung cancer, has been re-engineered with technological advancements in laser design.

- Subsequent to quarter end, in July 2016, the United States Patent and Trademark Office granted Concordia's subsidiary a patent for a lighting system used to perform in-vitro potency testing of Photofrin®. The Company believes that the patent strengthens the intellectual property profile of photodynamic therapy (PDT) with Photofrin®.

In connection with an ordinary course continuous disclosure review by the Ontario Securities Commission (the "OSC"), the Company has included additional disclosure with respect to its 2015 annual and first quarter 2016 results in its second quarter Management's Discussion & Analysis ("MD&A") to provide greater prominence to the Company's GAAP measures for those periods. The additional disclosure can be found on pages 15 to 17 of the MD&A. While this information was previously included in the Company's 2015 annual MD&A and first quarter 2016 MD&A, the Company and the OSC believe that, given the transactions entered into by the Company during those periods, the additional disclosure included in the second quarter 2016 MD&A is helpful in understanding the Company's GAAP measures over the periods indicated.

**Management Changes and Suspension of Dividend**

The Company announced today that Adrian de Saldanha, Concordia's Chief Financial Officer, will be leaving the organization to pursue other opportunities. Mr. de Saldanha will be replaced by Concordia's current Executive Vice President, Edward Borkowski. Mr. de Saldanha will remain with the Company during a transition period. The board of directors of the Company (the "Board") wishes to thank Mr. de Saldanha for his contributions to Concordia's growth.

As a result of his appointment as Chief Financial Officer, Mr. Borkowski will step down from his position on the Board.

Before joining Concordia, Mr. Borkowski was the CFO of Amerigen Pharmaceuticals, a privately held, generic pharmaceutical company focused on oral controlled release products. Previously, he was the CFO and Executive Vice President of Mylan N.V. During Mr. Borkowski's seven-year tenure at Mylan, from 2002 to 2009, he helped lead the company from a US$900 million revenue U.S.-based firm, to an international leader in generic and branded pharmaceuticals through a number of strategic acquisitions and internally focused development of new products.

> Subsequent to quarter end, on August 11, 2016, Concordia's Board unanimously agreed to suspend the $0.075 dividend per common share, payable quarterly. The Company believes the dividend payments can be better deployed towards long-term value-creating initiatives or debt repayment.
>
> * * *
>
> *Guidance for 2016*
>
> The Company's full year 2016 financial guidance has been updated as of August 12, 2016, as described below. The Company's full year 2016 estimates are based on management's current expectations with respect to prescription trends, pricing levels, foreign currency rates, inventory levels, and the anticipated timing of future product launches and events.
>
> Changes to financial guidance are primarily due to the following business factors:
>
> 1. Reduction in the GBP/USD foreign exchange rate
> 2. Introduction of generic competition for Nilandron® in July 2016
> 3. Competitive marketplace pressures with respect to two key products: Donnatal® and Plaquenil®
>
> The following is a summary of significant assumptions underlying Concordia's revised full year 2016 financial guidance:
>
> - Revenues of US$859 million to US$888 million
> - Adjusted EBITDA of US$510 million to US$540 million
> - Approximately 66 percent of revenues to be generated outside the U.S.
> - Target 2016 year-end Net Debt/EBITDA of 6.4x or below
> - Reduction in the GBP/USD foreign exchange rate to 1.31 assumed for the remainder of 2016 from July – December

21. On this news, Concordia' stock price fell $6.33 per share, or 38%, to close at $10.03 per share on August 12, 2016, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Concordia securities between November 12, 2015, and August 12, 2016, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

23. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Concordia' common shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Concordia shares were traded publicly during the Class Period on the NASDAQ. As of December 31, 2015, Concordia had approximately 50 million common shares outstanding. Record owners and other members of the Class may be identified from records maintained by Concordia or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

24. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

25. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

26. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Concordia; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

27. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

28. The market for Concordia' securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Concordia' securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Concordia' securities relying upon the integrity of the market price of the Company's securities and market information relating to Concordia, and have been damaged thereby.

29. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Concordia' securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Concordia' business, operations, and prospects as alleged herein.

30. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Concordia' financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

31. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

32. During the Class Period, Plaintiff and the Class purchased Concordia' securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information

alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

33. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Concordia, his/her control over, and/or receipt and/or modification of Concordia' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Concordia, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

34. The market for Concordia' securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Concordia' securities traded at artificially inflated prices during the Class Period. On December 28, 2015, the Company's stock price closed at a Class Period adjusted high of $41.31 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Concordia' securities and market information relating to Concordia, and have been damaged thereby.

35. During the Class Period, the artificial inflation of Concordia' stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the

damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Concordia' business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Concordia and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

36. At all relevant times, the market for Concordia' securities was an efficient market for the following reasons, among others:

(a) Concordia stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Concordia filed periodic public reports with the SEC and/or the NASDAQ;

(c) Concordia regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Concordia was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

37. As a result of the foregoing, the market for Concordia' securities promptly digested current information regarding Concordia from all publicly available sources and reflected such information in Concordia' stock price. Under these circumstances, all purchasers of Concordia' securities during the Class Period suffered similar injury through their purchase of Concordia' securities at artificially inflated prices and a presumption of reliance applies.

38. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

**NO SAFE HARBOR**

39. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Concordia who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

41. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Concordia' securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

43. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Concordia' securities in violation of Section 10(b) of

the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

44. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Concordia' financial well-being and prospects, as specified herein.

45. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Concordia' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Concordia and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

46. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's

management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

47. The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Concordia' financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

48. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Concordia' securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired

Concordia' securities during the Class Period at artificially high prices and were damaged thereby.

49. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Concordia was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Concordia securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

50. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

51. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**

**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

52. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of Concordia within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had

the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

55. As set forth above, Concordia and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: August 26, 2016

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Marc Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
ahood@pomlaw.com
mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**GOLDBERG LAW PC**
Michael Goldberg
Brian Schall
1999 Avenue of the Stars
Los Angeles, California 90067
Suite 1100
Telephone: 1-800-977-7401
Fax: 1-800-536-0065
Email: michael@goldberglawpc.com

Email: brian@goldberglawpc.com

***Attorneys for Plaintiff***

# Plaintiff's Certification

I, Chad Stanczyk, certify that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff’s transactions in the security that is the subject of the complaint during the class period specified in the complaint are as follows:

I bought 100 shares on 08/11/2016 at $16.76

5. Plaintiff has not sought to serve, or served, as a representative party on behalf of a class under this title during the 3-year period preceding the date on which this certification is signed, except as follows:

6. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 8/13/2016

REDACTED

[redacted]

**CONCORDIA INTERNATIONAL CORP. (CXRX)** **Stanczyk, Chad**

**LIST OF PURCHASES AND SALES**

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|---|---|---|---|
| 8/11/2016 | Purchase | 100 | $16.7600 |